Action to recover damages for unlawfully removing and converting to the defendant's own use certain machinery that had been placed in a mill run by water.
On 23 August, 1880, and for some years prior to that time, the plaintiff and defendant were owners in fee and tenants in common of the tract of land on which the mill was situate, each holding one undivided half. On said 23 August the defendant executed a contract, under seal, to convey his interest to one John T. McDonough on the payment of a note of the same date for the sum of $300, executed by said McDonough and wife. On 20 March, 1885, McDonough borrowed of the plaintiff the sum of $200, and executed his note therefor and purchased with said borrowed money the turbine wheel, shafts, pulleys, level, cog-wheel, etc., which are the subjects of this action, and executed, his wife joining, a mortgage conveying said machinery to secure the note due plaintiff, the machinery not then being in the mill.
On default in the payment of the $300 note for purchase-money of the land, the defendant, on 17 January, 1888, brought suit against McDonough to subject his interest in the land, and at April Term following of the Superior Court of Granville, obtained a decree under the (291) terms of which the interest of McDonough in the land were sold by a commissioner for the sum of fifty dollars, the defendant being the purchaser, and said sale was confirmed at the September Term, 1888, of said court.
The wheel and some other parts of the machinery were placed in the mill, after being conveyed, on 20 March, 1885, by mortgage deed to secure said note for $200 due to plaintiff, but before the sale under the decree aforesaid.
The plaintiff alleges that none of the machinery sued for had been placed in position in the mill until after the mortgage to him was executed.
The issues submitted were as follows: *Page 207 
1. Did the defendant unlawfully convert the property described in the complaint? "Yes."
2. If so, what damage has the plaintiff sustained thereby? "$215, and interest from 18 April, 1889, to date at 6 per cent."
First Exception — In addition to the issues agreed upon, the defendant tendered the following, which the court declined to submit to the jury, and the defendant excepted: "Are the plaintiff and defendant tenants in common of the property alleged to have been converted?"
The plaintiff introduced a mortgage executed by John T. McDonough and wife to the plaintiff for the machinery described in the complaint, and also the note secured thereby for $200, $100 of which was due 20 March, 1886, and $100 of which was due 20 March, 1887, and endorsed thereon was a credit of $17.50,23 November, 1887.
Second Exception — The plaintiff was examined and testified: "I loaned McDonough money. He said he wanted to buy machinery. The machinery he have the mortgage on was bought with this borrowed money. It consisted of a turbine wheel, cog-wheel, shafting, pulleys, etc., necessary to run the mill, and was worth at the time of the conversion $215. It was put in the mill. The defendant tore it (292) up. I saw him do it and forbid him. He said he was responsible and would carry it away. He took it away 18 April, 1889. The mortgage was made on the machinery before it was put in the mill. The mill-site was jointly owned by the defendant and myself. The mill hadn't been in operation for two years. I objected to his carrying it off that day. He said he was going to carry it off if he could. It was some months after the machinery was bought before it was put in the mill. My mortgage was registered first. The turbine is there now but not by my consent. I did not receive it. I don't know who brought it there."
There was other evidence for the plaintiff tending to show the manner of the removal of the property by the defendant, and that it was worth $215.
The defendant, being examined, testified: "I moved the machinery sued for from the mill, but did not injure it. I afterwards carried it back to the mill. I got the mud off it, and put three quarts of oil on it. No part of it is missing."
Third Exception. — The defendant proposed to show by the witness and by the records in the case of Bowling v. McDonough, lately pending in Granville Superior Court, that the interest of McDonough (one-half) in the mill-site was sold by order of court in said case and purchased by the defendant. Offered, first, in mitigation of damages, and second, to showbona fides. Objection by the plaintiff for the reason that the record does not show that the property sued for was the subject of said action, and because the plaintiff was not a party to said action. Objection sustained, and exception by defendant. *Page 208 
"The plaintiff forbid my taking the property. I took it up by force. It was not nailed down. The shafting was let into a box of casting. That was let in a sill on the ground. The box was either set on the sill or mortised in it."
(293) Fourth Exception. — The defendant asked the following instructions:
1. If the jury believe that the plaintiff and defendant are tenants in common of the property in dispute, the plaintiff cannot recover.
2. In this case, the plaintiff having made no demand on the defendant for the property in dispute, cannot recover at all in this action.
3. At most, the damages, done the plaintiff in this action, according to his own evidence cannot exceed the actual damage done to the property by the defendant or his agents while the property was in the possession of said defendant.
4. There is no evidence in this case that the defendant has damaged the said property at all.
5. The jury can act only on the evidence in this case, and in no aspect can the jury find a verdict for the actual value of the property.
6. There has been no unlawful conversion of the property by the defendant under the evidence.
7. McDonough having made a payment of $170 on the mortgage, Bowling was an equitable tenant in common with Waller to the amount of the excess over and above the mortgage of said Waller in the mill property and the property removed.
All of the above instructions were refused, and the defendant excepted.
Fifth Exception. — The court charged the jury that if the jury believed that the defendant took the personal property sued for into his possession, the plaintiff being present forbidding, and carried the same away, exercising a dominion over the same in denial of and inconsistent with the rights of the plaintiff, it being the property of the plaintiff, as further charged, the jury will answer the first issue "Yes", and this notwithstanding the fact that there may have been the equitable (294) tenancy in common contended for by the defendant. To which charge the defendant excepted.
Judgment for plaintiff, appeal by defendant.
The rule in reference to issues laid down by this Court in Emery v. R.R., 102, N.C. 209, has been repeatedly approved since. Lineberger v.Tidwell, 104 N.C. 510; Brown v. Mitchell, 102 N.C. 367; McAdoo v. R.R., 105 N.C. 151. *Page 209 
The defendant, in order to sustain his assignment of error, must show that the court has erred in refusing or failing, at his request, to present to the jury, through the medium of some issue submitted, a pertinent view of the law applicable to the testimony, whereby the jury may have been misled. Bonds v. Smith, 106 N.C. 564.
A tenant in common of a chattel cannot maintain an action of, or in the nature of, trover against his cotenant upon the ground merely that his demand for possession of the common property has been refused by the latter, unless he can show that the cotenant had subsequently consumed it or placed it beyond recovery by means of legal process. Newby v. Harrell,99 N.C. 149; Pitt v. Petway, 34 N.C. 69; Lucas v. Wasson, 14 N.C. 398; Cooley Torts, 455; Rippey v. Davis, 15 Mich. 75.
But where the tenant in possession of personal chattels withholds the common property from his cotenant, or wrest it from him and exercises a dominion over it, either in direct denial of or inconsistent with the rights of the latter, an action will lie for conversion. Shearing v.Rigsbee, 97 N.C. 221; 2 Greenleaf, sec. 642; University v. Bank,96 N.C. 284; Cooley Torts, supra,; 2 Greenleaf Ev., 636a; Grove v. Wise,39 Mich. 161. There is some conflict among the authorities, and it is difficulty to draw or trace the shadowy line that marks the (295) limit to which a tenant in common may go in the exercise of control over the common property without subjecting himself to liability for conversion. But Schouler Personal Property, p. 200, after taking the extreme ground that at common law nothing short of the destruction of a chattel, or a conversion of the whole to his own use, or something equivalent, will render the owner in possession liable to his coowners, says that mere dispossession of a cotenant might, "if accompanied withother acts showing a hostile intent," amount to a conversion. It would seem that the violent wrenching of the machinery from the mill, when the plaintiff was present forbidding, was the strongest evidence of such intent.
In Strickland v. Parker, 54 Me. 263, the facts were that the purchaser at execution sale of an undivided interest in a tract of land, removed the superstructure of a marine railway located on the land, consisting of iron and wooden rails and sleepers, etc., and placed it upon another tract of land. The Court held that the property removed constituted a part of the land and passed with it, but that the cotenant of the purchaser might maintain trover against him for removing it. The Supreme Court of Michigan, in the case of Grove v. Wise, supra, held that even before condition broken, any person wrongfully interfering with a mortgagee's possession of a chattel under his mortgage deed, would subject himself to liability to damage in an action of trover brought against him by such mortgagee. The facts in that case were, that an undivided half interest *Page 210 
in a steam engine, boiler and some planing mill machinery had been mortgaged to the plaintiffs and the defendant Wise, having previously owned the other half interest, had, subsequent to the date of the mortgage, bought at bankrupt sale the land on which the building containing the engine, boiler and machinery stood. The case is cited with (296) approval both by Cooley and in the Notes to Greenleaf's Evidence.
It seems to be settled that where personal property, after being subjected to the lien of a mortgage, is attached to mortgaged land, it will be held to have passed to the mortgagee in the chattel mortgage as against the assignee or holder of the real estate mortgage, who had notice of the first mortgage when it was attached. Hermon Chat. Mort. sec. 138; Sheldonv. Edwards, 35 N.Y. 279; Smith v. Benson, Hill, 176. Where a steam mill was mortgaged, not including the land on which it stood, it was held by the Supreme Court of Iowa that subsequent purchasers of the mill and premises on which it stood, who had notice of the chattel mortgage, took title to the mill subject to it. Gunter v. Alexander, 15 Iowa 470; Hermon, supra, sec. 138.
The general principle that exclusive possession of personal property by one tenant in common, and a denial of the rights of his cotenants, is a conversion for which trover will lie, is supported by numerous adjudications in the courts of other States. Figuet v. Allison, 8 Cooley (Mich.) 328; Well v. Oliver, 21 Pick., 563; Winner v. Penniman,35 Md. 163; Person v. Wilson, 20 Minn. 189.
In Stephens v. Koonce, 103 N.C. 266, the defendant tendered to the plaintiff a judgment for the possession of a steam engine, boiler, sawmill, grist-mill, etc., removed from his land, and the costs of the action. The Court held that the defendant was not only liable for costs, notwithstanding such officer, but for the full value of the property converted, and interest allowed by the jury, and could not be compelled to take the property back. The general rule is, that where one of the owners of an undivided interest in a chattel exercises such dominion over the common property as is inconsistent with the rights of his coowner, the latter may bring claim and delivery, if the property can be found, and recover the specific property, with damage for deterioration as well as (297) detention, or he may elect to sue for damages for the wrongful conversion and recover the value of the property at the time of the taking, and costs. Stephens v. Koonce, supra; Rippey v. Davis, 15 Mich. 75;Hall v. Younts, 87 N.C. 285. After suit has been brought for the conversion, the owner cannot be compelled to take the property back, but when he does allow it to be returned in damaged condition, its diminished value can be considered in mitigation of damages. 3 Sutherland on Damages, 530. *Page 211 
The rule as to the measure of damages would be different where fixtures, such as gas piping, are torn from a building and the building is thereby rendered unfit for occupation and use. There the measure of damages is the cost of restoring the building to its original state and the loss in its rental value while it was uninhabitable. Willis v. Branch, 94 N.C. 142.
It was not necessary that the plaintiff should make a formal demand for possession of the property before bringing the action, if, as both plaintiff and defendant testified, he was present forbidding when it was removed from the land. The law did not require him to act on the assumption that one who took it away in the face of his protest would return it at his request, or to accept it in full satisfaction of his damages, if there was a voluntary offer to return it.
The exceptions insisted on in this Court were the first, fourth and fifth. For the reasons given, we do not think that the judge erred in refusing the instruction asked, or substituting that given, or in the rulings excepted to.
No error.
Cited: Smith v. R. R., 114 N.C. 763; Parker v. Brown, 136 N.C. 289;Cox v. Lighting Co., 151 N.C. 66; Doyle v. Bush, 171 N.C. 12.
(298)