### J. J. ADAMS v. FIRST NATIONAL BANK OF WINSTON.

*Bank Dealings—Partnership Overdraft—Partner's Individual Account—Set-off—Counter claim.*

1. The right of set-off only exists between the same parties and in the same right.

2. A bank has no lien on the deposit of a partner for a balance due from the partnership; therefore,

3. Although a bank may recover from any partner the overdraft of the partnership in an independent action, or may plead it as a counter-claim in a suit by such partner to recover his individual deposit, yet the bank may not charge up such overdraft against the partner's individual account.

This was a CIVIL ACTION, begun before a Justice of the Peace, and heard at Spring Term, 1893, of FORSYTH Superior Court, before *Boykin, J.*, and a jury.

The plaintiff complained for the non-payment of the sum of $40, alleged to be due him by defendant, which debt was denied by the defendant.

The plaintiff, introduced as a witness in his own behalf, testified that on the 21st day of March, 1892, the firm of J. J. Adams & Co., composed of himself and one J. A. Reid, dissolved copartnership: that theretofore they had an account with the defendant bank, and plaintiff went to defendant bank before noon of the said day and asked for the account

in bank of J. J. Adams & Co., wishing to know the balance; that he was told by the bookkeeper of the bank that the balance due J. J. Adams & Co. was $201.08, for which amount he gave the check of J. J. Adams & Co., and the check was there and then paid to him; that this sum was coming to witness as due him of the assets of J. J. Adams & Co.; that several days thereafter, about the 23d of March, the plaintiff deposited with the defendant bank the sum of $615 of his own money from the sale of his own individual property, and opened the account in his own name; that he checked on this sum various times in various amounts, and that on the 5th day of April, 1892, he made a check for balance due him, when he was told by the officer of the bank that his check was not good by $40; that this sum had been taken from his account by order of the president of the bank and paid on a draft drawn by J. J. Adams & Co.; that his balance, less the $40, was paid to plaintiff, plaintiff demanding the total amount, including the $40, which was refused. Plaintiff further testified that he did not know whether the check for $40, drawn in the name of J. J Adams & Co., was in the bank at the time he asked for the balance due J. J. Adams & Co., on March 21, or not; that no notice of the dissolution of the copartnership of J. J. Adams & Co. has been given by publication.

Colonel James Martin,. in behalf of the defendant, testified that he was a bookkeeper in the defendant bank, and on the 21st March, 1892, the plaintiff asked him for balance of J. J. Adams & Co., which he told him was $201.08, and which plaintiff made check for and drew the amount out of bank; that " a check of J. J. Adams & Co. for $40, made by J. A. Reid, came into bank, I think, on that day; it might have been in the bank at the time I gave the balance of $201.08 to Mr. Adams; it was not entered on the books, but might have been on the file. I cannot say whether it was in bank at the time or not. I did not know it had been paid by the

teller. If I had known so, I would have charged it in the account of J. J. Adams & Co. before giving the plaintiff the balance."

J. A. Reid, a witness for defendant, testified that he was a member of the firm of J. J. Adams & Co.; that he drew the check for $40 on the firm account in bank to pay an individual debt due by him for rent; that the check was given several days before the 21st of March; that the firm agreed to dissolve on the 21st of March, but no final settlement of the copartnership had ever been made; that on the 21st of March they quit business, and Adams drew out all they had in bank.

No special instructions were asked by either side.

His Honor instructed the jury, among other things, as follows:

"That if the check given by J. A. Reid was paid by the defendant after the payment to plaintiff of the balance of $201.08, the plaintiff would be entitled to recover; that if, as the defendant contended, the check for $40 was paid by the bank before the check for $201.08 was paid plaintiff, and the defendant gave the balance by mistake, the plaintiff would not be entitled to recover.

To which charge, given as above stated, defendant excepted, and assigned as error the charge as above given; and further, that he did not tell the jury that the defendant had a right to offset the $40 check as an overdraft of the firm against the individual account of J. J. Adams.

There was a verdict and judgment for plaintiff.

*Messrs. Glenn & Manly,* for plaintiff.
*Messrs. Watson & Buxton,* for defendant.

CLARK, J.: If the overdraft of the firm of which plaintiff was a member was paid by the bank after the balance was drawn out, it not appearing that the bank had any notice of

the dissolution, such overdraft could be recovered by the bank out of the plaintiff as a member of the firm. If, at the time the plaintiff drew a check for the balance which the cashier told him was due the firm, in fact, there was less due the firm, it was equally an overdraft, by mutual mistake of the parties, and the bank could recover it back out of the plaintiff as a member of the firm. But the bank had no right to charge up against the individual account of a member of a partnership a balance due it on the firm's account. Such right of set-off only exists between the same parties and in the same right. Morse on Banks, § 334. The bank has no lien on the deposit of a partner for a balance due from the partnership. Bolles on Banks, § 385. The reason is thus given by Lord LANGSDALE, Master of the Rolls, in *Watts* v. *Christie*, 11 Beavan, 555: "It is of the nature and essence of transactions between banker and customer that a customer, having a balance in the hands of his banker, should have full power over it and be able to command payment at sight. If, where there is an account between a firm and the bank, and another account with one particular member of the firm, it be once held that the bank has a lien upon the balance due upon the separate account of the individual partner for a balance due to the bank from the firm, there would be an end to some transactions which it is most important to commerce should be continued."

Inasmuch as the members of the partnership can draw in the name of the firm, if their overdrafts can instantly be charged up against the individual account of a member of the firm, no partner would be safe in keeping his private account in the same bank where the partnership account is kept. Otherwise his private funds, deposited perhaps for special engagements he may have in view, would be liable at any time to be swept away by checks drawn by another for his own personal ends, but in the name of the firm, and the partner's checks on his private account would go to protest,

to his damage and inconvenience.  Then, too, in case of insolvency and an assignment by the partner, or of the partnership, his available cash could be subject to appropriation by the bank in this short-hand mode to his partnership liability, notwithstanding his or the firm's election in the deed of assignment to prefer another or to share the assets *pro rata.* And this also would deprive the individual partner having a sum to his credit, using it as his personal property exemption as against the indebtedness of the partnership to the bank. It is true in the present case the plaintiff being liable to the bank for the overdraft of the firm, the bank could sue him therefor, and hence, of course, could have pleaded it as a counter-claim instead of bringing an independent action. But the bank did not plead a counter-claim.  It claimed the right to charge up against the individual account of the plaintiff the overdraft of the firm, and hence pleaded the general issue that it was not indebted.  This it cannot do. The difference between a counter-claim and a payment is not merely technical, but substantial.  Some of the differences are pointed out above.  There are others, among them the cases in which the statute of limitations might be pleaded to the counter-claim.  In the present case, it is still open to the bank, as it did not plead the counter-claim, to bring an action against the plaintiff for the balance due by the firm.  It is not yet barred by the statute of limitations, and if the plaintiff has property in excess of his exemptions, the bank has lost nothing except the bill of cost in this case.

While not concurring altogether in the reasons of his Honor, we reach the came conclusion, and declare the

Judgment Affirmed.