PARKER v. BROWN.

(Filed October 18, 1904).

1. EXECUTORS AND ADMINISTRATORS—*Widow—Trover and Conversion—Year's Support—Allotment—The Code, sec. 2121.*

An allotment of a year's support from growing crops at a specified value is sufficiently definite to admit the record thereof in evidence by the widow in an action for the conversion thereof.

2. CROPS—*Leases—Executors and Administrators—Contracts.*

Where a cropper dies before harvesting his crop, his personal representatives are entitled to recover his share of the crop.

3. LANDLORD AND TENANT—*Crops—Widow—Trover and Conversion—The Code, secs. 1754-1756.*

The widow of a tenant cultivating land on shares, after the crop is allotted to her in her year's support, may maintain an action for conversion against the landlord.

4. LANDLORD AND TENANT—*Contracts—Crops—Widow.*

Where a landlord agrees with the widow of the tenant, to whom the crop has been allotted as a part of her year's support, that he will harvest the same, and after deducting the expenses pay her her part, he thereby recognizes the allotment.

5. LANDLORD AND TENANT—*Executors and Administrators—Trover and Conversion—Crops—Widow.*

Where a landlord harvests crops already allotted to the widow of the tenant as a part of her year's allowance, he holds the same in trust for her, and she may bring trover therefor.

6. LANDLORD AND TENANT—*Damages—Measure of—Trover and Conversion.*

In an action by a widow to recover an interest in crops raised by her husband on leased land, the instruction of the trial judge in this case is proper.

ACTION by Eula M. Parker against W. D. Brown, heard by *Judge W. B. Council* and a jury, at February Term, 1904, of the Superior Court of HERTFORD County. From a judgment for the plaintiff the defendant appealed.

*D. C. Barnes* and *L. L. Smith*, for the plaintiff.
*Winborne & Lawrence*, for the defendant.

CONNOR, J. During the year 1902, W. E. Parker contracted with the defendant to cultivate his land—the defendant furnishing and feeding the team, farming implements, etc., and Parker furnishing and feeding the labor to cultivate and save the crop. The fertilizers were to be paid for by both parties in equal proportions. The crop, except the corn, was to be divided equally; of the corn Parker was to have only one-fourth. Parker cultivated the crop until the latter part of July when he was taken sick, and died on September 6th. A few days before his death the plaintiff, being *enciente,* left the defendant's premises and went to her father's home where she could have attention during her confinement. The plaintiff, after her husband's death, applied to a Justice of the Peace to lay off her year's support. Among other articles allotted to her were "cotton, $60; five barrels of corn, $15; peanuts, $125. The value of all the articles allotted was only $254.75, leaving a deficiency of $245.25," being his interest in the crops raised on the defendant's land.

The Court upon the complaint and answer submitted the following issues: 1. "Did the defendant wrongfully and unlawfully convert to his own use the property of the plaintiff as alleged in the complaint?" 2. "What damage has the plaintiff sustained by reason of said conversion?" The defendant excepted to the issues and assigns the submission of them as error. The issues are the only possible ones which could have been submitted. The plaintiff offered in evidence

the record of accounts showing the return of the jury allotting the year's support. The defendant objected, but the Court admitted the record and the defendant excepted. The objection cannot be sustained. Section 2121 of The Code directs that the commissioners shall make and sign three lists of the articles allotted, etc. One of them shall be delivered to the widow, one to the personal representatives and one returned to the Clerk of the Superior Court, who shall file and record the same. It is only the list of articles which is to be recorded. The defendant relies on the case of *Kiff v. Kiff,* 95 N. C., 71, to sustain his exception. The allotment here is sufficiently definite. While, as was said by the Court in that case, there should be a reasonable certainty in the description of the property allotted, this beneficent provision for the year's support of the widow should not be defeated by requiring any more than a reasonably certain allotment. Although in the complaint she plainly alleges upon oath that her husband's interest in the crop was allotted to her as a part of her year's support, the defendant, under oath, says that it is "untrue and denied," and it is worthy of note that the justice who made the allotment swears that "two commissioners were with me when this allotment was made; Brown was along when we looked over the crops, was present and showed the crops cultivated by Parker." The defendant introduced no evidence. Certainly there was no room for misunderstanding what property was allotted to the plaintiff. The exception cannot be sustained. The plaintiff swore that she never got anything from the crop except one bushel of corn.

Benthall testified that he was the justice who helped allot the plaintiff's year's support. The record of the allotment being read to him, after objection, he said "the articles were allotted from the crops raised by the plaintiff's husband for the year 1902. At the time the allotment was made the crops were growing in the field, and we knew no other way to get

at it except to estimate it as we did. We estimated her husband's interest in the cotton crop at sixty dollars; his interest in the corn at fifteen dollars, and in the peanuts at one hundred and twenty-five dollars. After the allotment I took charge of the crops for her. I walked over the land with the defendant and asked him to take charge of the cotton crop for me and gather it, and he said he would. He was to be paid expenses for saving the crop and for his trouble. I was to take charge of the peanuts, gather and house them, and help house the corn. We got up some of the corn and divided it under the contract; shocked the peanuts, 300 shocks; could not get laborers to pick them. It was the last of December before I could pick the peanuts. I went there just before or just after Christmas to pick the peanuts, and picked two and a half days. The defendant and I had some disagreement; sent the boy back and the defendant declined to let him have the key. The defendant forbade me interfering with the crops any more, or going in the field where the crops grew. The defendant did not agree to accept me as a tenant. I think the amount the defendant claimed as due for advancements was under $50. The defendant took charge of the crop after he forbade me and the hired hands to save it. The blackbirds damaged the peanuts very much. The cotton was mostly picked out early in the fall. On the day of the allotment the defendant said that the guano account was $40 or $50."

This witness went to the defendant's house just before Christmas to settle, for the plaintiff said that he had come to settle Mrs. Eula Parker's account; and the defendant said he would not receive or accept the money. When asked for the account the defendant refused to present it. He tendered him $57 for Mrs. Parker and he refused it.

The plaintiff testified that she was at the defendant's in October, 1902; he gave her weights of cotton he had gathered.

T. T. Parker testified in regard to the cost in saving the crop, to the value of the crops, etc. All of the testimony was objected to and the defendant excepted. The defendant introduced no testimony, but moved the Court to dismiss the action as upon nonsuit. The motion was denied and the defendant excepted.

The Court instructed the jury that if they believed the evidence they would answer the first issue "Yes;" that one-half the cotton and peanuts and one-fourth the corn raised by W. E. Parker on the defendant's land for the year 1902 was the property of the plaintiff. To this charge the defendant excepted.

In his brief the defendant attacks the validity of the allotment for uncertainty. The objection, as we have said, cannot be sustained. The allotment being valid, the plaintiff became the owner of such interest as her husband had in the crops. *Kiff v. Kiff, supra*. The defendant insists that the husband was a mere servant and that he was only entitled to wages, and then only upon condition that he completed his term of service and cultivated and harvested the crops—such wages to be measured by the amount of the crops raised; that he had no property in or right to the possession of any part of the crops upon which to base an action for a conversion. The form of the action or the prayer for relief is immaterial. The plaintiff has made a clear, plain statement of her rights and her wrongs. The defendant denies each allegation, and "for a further defense" sets out in detail his version of the transaction; when the plaintiff introduces testimony the defendant, by his demurrer admits it, and the jury find it to be true, sustaining her allegations. The defendant relies upon *Thigpen v. Leigh*, 93 N. C., 47. While this Court held in that case that a contract to make and save a crop was entire, and if the plaintiff of his own accord and without any legal excuse abandons the crop he loses his right or interest

therein, the Court has not decided that where, as is admitted in this case, the lessee has made the crop and harvest time has come and he sickens and dies, the lessor may take the entire crop and refuse to render any account of it, or pay over the proceeds after deducting all amounts due for advancements and for saving the crops to the representatives of the lessor  It matters but little, if at all, in what form of action the widow, who has by the allotment of her year's support become entitled to her husband's interest, seeks to have a settlement with the lessor and payment of the amount due her for the support of herself and her infant children.   The Court will hear her complaint and afford to her a remedy if upon "a plain and concise statement of the facts constituting a cause of action" she be entitled thereto.   We will not, since the adoption of The Code of Civil Procedure, stop to inquire whether the cause of action be in trover or detinue, or whether, except for the purpose of jurisdiction, it be *ex delicto* or *ex contractu*.   If she has a legal right of which the defendant has deprived her, the Court will find and administer a remedy corresponding to her right.   This is the perfection of remedial justice.

Assuming, however, that the contract made by Parker with the defendant was entire, and that the portion of the crops which he was to receive at the end of his term of service was in the nature of wages, it is well-settled that his failure to perform in full being caused by sickness and death, he does not lose his right to be paid as upon a *quantum meruit*.

The principle enforced in *Thigpen v. Leigh, supra,* has been modified by this Court in *Chamblee v. Baker,* 95 N. C., 98.  Referring to that case, *Smith, C. J.,* says: "It is otherwise under the present system, and the entire dispute, involving opposing demands, is now adjusted in a single action.   This is some relaxation of the doctrine regarding special contracts and the enforcement of the obligations they

create. The manifest injustice, upon such technical grounds, of refusing all compensation for work done and not completed, * * * and allowing the party to appropriate them (the benefits) to his own use without paying anything, has been often felt and expressed by the judges and a mode sought by which the wrong could be remedied"—citing *Gorman v. Bellamy,* 92 N. C., 496. See also *Brown v. Morris,* 83 N. C., 251, and *Ice Co. v. Coal Co.,* 134 N. C., 574. In *Thigpen v. Leigh, supra,* it appeared that the lessee "of his own accord abandoned the crop in June." However this may be, and without intending to question the principle upon which that case is sustained, further than it may be modified by *Chamblee v. Baker, supra,* it is clear that when the lessee is prevented by the visitation of God, as sickness or death, from performing his contract in full, he or those in succession may recover the amount of the compensation promised, subject to the deduction of such loss or damage as is sustained by his sickness or death.

In *Wolfe v. Howes,* 20 N. Y., 197, 75 Am. Dec., 388, it is said: "There is good reason for the distinction, which seems to obtain in all the cases, between the case of a willful or negligent violation of a contract and that when one is prevented by the act of God. In the one case, the application of the rule operates as a punishment to the person wantonly guilty of the breach and tends to preserve the contract inviolable; while in the other, its exception is calculated to protect the rights of the unfortunate and honest man who is providentially and without fault on his part prevented from a full performance." This exception to the general rule is in accordance with the maxim, *actus dei neminem facit injuriam,* and is sustained by a number of cases cited in 20 Am. & Eng. Ency. (2 Ed.), 44.

We do not, however, assent to the proposition that the lessee is a mere servant working for wages. He has an interest

in the crops subordinate, it is true, to the rights of the lessor landowner, as prescribed by section 1754 of The Code. This section, it will be observed, is a part of the Landlord and Tenant Act of 1876-'77, and expressly refers to lands rented or leased for agricultural purposes. It is true that the term "cropper" is used in some of the cases in our reports, but, except in the sense that the lessee makes a crop and the lease or contract has that object in view, the term is not in harmony with the language of the statute. We do not intend by anything said herein to question or doubt the well-defined and secured rights of the landowner as provided by statute and the decisions of this Court. We cannot, however, give our assent to the construction of the statute contended for by the defendant. It recognizes that in many respects the lessee has a property in the crops made, and it is for this reason that, for the purpose of protecting the lessor in the payment of his rent and the performance of any stipulations in the contract, such as ditching, fencing, etc., and the payment of advancements made, it provides that "any and all crops shall be deemed and held to be vested in possession of the lessor or his assigns." * * * In the next sentence the right of the lessor is referred to as "this lien." * * * In section 1755 the lessee is given the right, by complying with the statute, to bring an action for the recovery of such part of the crops as he may be entitled to. In this case the plaintiff was not compelled to resort to the remedy prescribed by section 1756 of The Code. She may pursue her remedy by a civil action to recover the value of the crops, subject to such deductions as the lessor was entitled to by reason of advancements, cost of housing, and such damage as he may have sustained by reason of the inability of the lessee to perform his contract

There is, however, another view of the case upon which the plaintiff is entitled to maintain her action. It is admitted

by the demurrer to the evidence that the defendant, after the allotment of the year's support of which he had full knowledge, agreed with her father that he would gather the cotton, receiving pay for his expense and trouble, and that the father should gather the peanuts and corn.   While the defendant did not by this agreement forfeit any of his rights as lessor to be paid the amount due him, he did recognize the right of the plaintiff to have her husband's interest in the crops as allotted to her.   When the crops came into his actual possession, either by being saved by himself or by her father, he held them in trust, first to pay himself the amount due, and then for the plaintiff   The failure of the plaintiff's agent to pick the peanuts by January 1, 1903, they having been shocked, did not work a forfeiture of her interest therein; it only entitled the defendant to proceed to have the peanuts picked, and deduct the amount paid therefor and any damage he may have sustained by reason of the failure of the plaintiff to do so.

It is further admitted by the demurrer that just before or after Christmas the plaintiff's father offered to pay the defendant what she owed him, which he declined to accept. He asked for a statement of his account, and upon his refusal to give it he tendered the amount which the defendant had said was due for fertilizers, all of which the defendant refused.   The defendant in his answer says that he had a statement of all amounts paid out for saving the crops, but for some reason he fails to introduce any evidence to sustain his allegations.   It is true that at the time the demand for settlement was made, some four hundred or five hundred pounds of cotton remained in the field, and the peanuts had not been picked.   If the defendant had given this as a reason for not at that time coming to a settlement, the plaintiff would have then had no cause of complaint.   He gives another and entirely different reason, indicating clearly that he does not

recognize the plaintiff's right to have an account or make any claim to the crops. This was a clear denial of any duty to the plaintiff in respect to the crops and entitled her to bring her action. In any point of view, the Court below correctly refused to dismiss the action, and charged the jury that if they believed the evidence to answer the first issue "Yes." This case is clearly distinguished from *Shearin v. Riggsbee*, 97 N. C., 216, and *Waller v. Bowling*, 108 N. C., 289, 12 L. R. A., 261. The special requests for instructions were all based upon the defendant's contention that the plaintiff was not entitled to maintain her action, and are involved in the motion to nonsuit. They are disposed of by the ruling sustaining his Honor's refusal to direct a nonsuit, and approving the charge upon the first issue.

His Honor charged the jury upon the second issue as follows: "In arriving at your conclusion as to this, you will first ascertain the value of the cotton and peanuts which were raised on the land of the defendant by the plaintiff's husband in 1902; from this you will deduct the cost of the fertilizers used for these crops. You will then ascertain the value of the corn that was raised on this land and the cost of the fertilizers used for this crop; then deduct the cost of the fertilizers from the value of the corn; then divide the amount into four parts, and divide the value of the cotton and peanuts as found by you into two parts; then take one of these parts and one-fourth of the value of the corn and add these items together, and you will then have the amount or value of the plaintiff's interest in the crops, subject to expense of taking care of them by the defendant. From the amount ascertained as the value of the plaintiff's interest in the crops you will then deduct such amount as you find was reasonably necessary to take care of the crops as the husband of the plaintiff was required under his rental contract with Brown, and then deduct this sum from the amount you find

136——19

as the value of the plaintiff's interest in the crops subject to this charge, and the amount left will be your answer to the second issue." The defendant excepted. The instruction was correct, and gave the jury the proper rule for arriving at the verdict. If the jury have failed to reach a correct verdict on the second issue, the defendant has no just cause to complain. He alone had the data by which to fix the amount of the plaintiff's interest in the crops after paying all liens thereon. He, we must assume, for reasons satisfactory to himself, withheld it and left the plaintiff to make out her case and the jury to act upon such testimony as she could give them. He shows no damage sustained by the death of the lessee or delay in gathering the peanuts. It is not for us to do more than decide the questions of law presented upon the record, but we cannot refrain from saying that it would seem that a matter so simple, and rights so manifest, might have been settled easily and promptly. The husband died September 6, 1902, leaving the fruits of his year's labor in the field. The widow and her infants are not yet in the enjoyment of a year's support We have examined the record and briefs of counsel with care and find no error in the judgment. Let it be

Affirmed.