DAVIS et al. v. BESSEMER CITY COTTON MILLS et al.

(Circuit Court of Appeals, Fourth Circuit. April 13, 1910.)

No. 827.

1. PLEADING (§ 409*)—REVIEW—INSUFFICIENCY OF ANSWER—EFFECT OF TRIAL.

In an action on a judgment, where the answer denied its validity on the ground that no process was served on defendants, its insufficiency in not also denying that they appeared is not ground for reversal of a judgment for defendants, where there was no demurrer, and, on the trial of the issue, plaintiff introduced the record, which recited the service of process, and that defendants did not appear nor plead.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1375–1383, 1386; Dec. Dig. § 409.*]

2. JUDGMENT (§ 828*)—ACTION ON FOREIGN JUDGMENT—DEFENSES.

In an action in a federal court on a personal judgment of a state court, it is open to the defendant to show want of jurisdiction by contradicting the return of the officer showing service of process on him.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1505; Dec. Dig. § 828.*]

3. ACTION (§ 37*)—COUNTERCLAIM—FORM AND REQUISITES OF PLEADING—CODE OF NORTH CAROLINA.

Under the Code of Civil Procedure of North Carolina, as construed by its Supreme Court, which governs the procedure in the federal courts in that state in actions at law, by virtue of the conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), the fact that an answer pleads a counterclaim for conversion does not preclude a recovery thereon, although the evidence shows that it is founded in contract, and not in tort.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 311–319; Dec. Dig. § 37.*]

4. FACTORS (§ 25*)—DUTIES AS TO SALE OF GOODS—PRICE.

Where defendants consigned manufactured goods to a firm of factors for sale, in the absence of instructions otherwise, it was the duty of the factors to sell the same for the current market price, and, if they sold them for less, they are liable for the difference between the amount received and the market value.

[Ed. Note.—For other cases, see Factors, Cent. Dig. § 26; Dec. Dig. § 25.*]

5. SET-OFF AND COUNTERCLAIM (§ 44*)—NATURE OF INDEBTEDNESS—PARTNERSHIP AND INDIVIDUAL DEMANDS.

Under Laws N. Y. 1897, c. 420, which provides that every general partner is liable to third persons for all obligations of the partnership jointly and severally with his general copartner, and Code Revisal N. C. 1905, §§ 413, 415, which contain a similar provision, and further provide that, on the death of any person, all demands against him with certain excep-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions and the right to prosecute any action or proceeding thereon shall survive against his executors, a claim against a firm of factors doing business in New York, arising out of a consignment of goods to such firm for sale, may be set up as a counterclaim in an action brought in North Carolina against the owner of such claim by the executors of a general partner in such firm of factors.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 91–97; Dec. Dig. § 44.*]

6. EQUITY (§ 44*)—JURISDICTION—MATTERS OF ACCOUNT.
It is within the jurisdiction of a court of law to hear and determine matters of account where they are not complicated, and the remedy in such court is adequate.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 44.*]

7. SET-OFF AND COUNTERCLAIM (§ 35*)—SUBJECT-MATTER—DAMAGES FOR BREACH OF CONTRACT.
A claim for damages for breach of a contract, although unliquidated, may be made the basis of a counterclaim, where the measure of damages is fixed and certain.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. § 60; Dec. Dig. § 35.*]

8. JUDGMENT (§ 622*)—COUNTERCLAIM—ACTION ON JUDGMENT.
The fact that the demand of a plaintiff has been reduced to judgment does not preclude the defendant from pleading a counterclaim when sued on the judgment in another jurisdiction.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1136; Dec. Dig. § 622.*]

9. SET-OFF AND COUNTERCLAIM (§ 44*)—SUBJECT-MATTER OF COUNTERCLAIM— PARTNERSHIP AND INDIVIDUAL DEMANDS.
Under the law of North Carolina, where the liability of partners for partnership debts is joint and several, a debt of the partnership founded on contract may be pleaded as a counterclaim in an action by a partner for a debt due him individually.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Cent. Dig. §§ 91–97; Dec. Dig. § 44.*]

In Error to Circuit Court of the United States for the Western District of North Carolina, at Asheville.

Action by Daniel A. Davis and Elliott M. Eldredge, executors of Orris K. Eldredge, deceased, against the Bessemer City Cotton Mills and John A. Smith. Judgment for defendants, and plaintiffs bring error. Affirmed.

Frederic D. McKenney (William G. Wilson, on the brief), for plaintiffs in error.

Charles A. Moore (Moore & Rollins, on the brief), for defendants in error.

Before PRITCHARD, Circuit Judge, and WADDILL, and CONNOR, District Judges.

CONNOR, District Judge. Orris K. Eldredge, a citizen of New York, sued defendants in error, citizens of the Western District of North Carolina, declaring upon a judgment recovered by him in an action against them in the Supreme Court of the county of New York, for the sum of $5,138.30. Defendants in error answered, denying that any service of process "personally or otherwise" was made on

them in the action alleged to have been brought by plaintiff against them, or "that any valid judgment was rendered against them in such action." They also denied "that they were liable to the plaintiff in any sum whatsoever or, in any other way."

For further answer and by way of counterclaim defendants in error allege:

That on June 20, 1904, the Bessemer City Cotton Mills, hereinafter called the "Mills," was and have since said date been continuously engaged in the manufacture of cotton goods in Gaston county, N. C. That on said day said Mills, in consideration of a loan, executed its promissory note to plaintiffs' testator, Orris K. Eldredge, for the sum of $5,000, with defendant John A. Smith as indorser, and on the same day, and as a part of the same transaction, executed the contract, a copy of which is attached, in the following words, to wit:

"This agreement made by and between the Bessemer City Cotton Mills, a corporation of the state of North Carolina, and J. A. Smith, of Bessemer City, state of North Carolina, parties of the first part, and Orris K. Eldredge, of the city and state of New York, party of the second part, witnesseth:

• "That, for and in consideration of a loan of five thousand dollars ($5,000) by the said Orris K. Eldredge, the said Bessemer City Cotton Mills and J. A. Smith hereby covenant and agree to consign the entire product and output of said mills and factories to said Orris K. Eldridge or to any firm or copartnership with which he may be at any time connected upon his written request and designation of same, and for the sale of such product and output upon commission, which commission, based upon the prices at which the same shall be sold, shall be at the rate of five per cent. (5%).

"If, for any reason at any time, the said Bessemer City Cotton Mills and J. A. Smith wish to transfer this account and its said consignments to any other party or parties, the said Bessemer City Cotton Mills and J. A. Smith shall and hereby covenant and agree that they will, as an essential preliminary to, and condition of such change and transfer, repay, purchase, or cause to be purchased of the said Orris K. Eldredge, or his personal representative, the said loan of five thousand dollars ($5,000), together with all accrued indebtedness, should he so desire, and to further liquidate all indebtedness upon the said account for advance and any other indebtedness, which may have been incurred upon or by reason of the same to the firm or copartnership in which said Orris K. Eldredge is interested.

"In witness whereof, said Bessemer City Cotton Mills has caused its corporate seal to be hereto affixed and these presents to be signed by its president and J. A. Smith personally, and the said Orris K. Eldredge has hereunto affixed his hand and seal this twentieth day of June, A. D., 1904."

That at the same time, and in pursuance of said agreement, said Mills entered into an agreement with the firm of Eldredge, Lewis & Co., by which it agreed to ship its output of goods to said firm to be sold on commission. That plaintiff O. K. Eldredge is a member and managing partner of said firm. That the amount of said note was credited to said Mills on the books of said firm of Eldredge, Lewis & Co. That, in pursuance of said contract, the said Mills immediately thereafter began to ship its entire output to Eldredge, Lewis & Co. "under direction of plaintiff." That said Mills continued to ship its goods to said firm "under directions of the plaintiff" until the——day of October, 1904, when the same was discontinued by order of plaintiff. "That at said time the said firm had in its possession a large quantity of the goods of said Mills, worth more than enough to repay the plaintiff and his said firm all advances made by it, including the

note for $5,000, which he has unlawfully, and in violation of said contract, converted to his own use; that upon a just and proper accounting between the plaintiff and the defendant the plaintiff would be due the Bessemer City Cotton Mills the sum of $3,050.43." "Attached hereto is a statement of the amount and value of the goods marked 'Exhibit B,' for which the plaintiff is liable to the defendant corporation at the price therein stated."

Plaintiff's testator filed a reply to the new matter and counterclaim, admitting the first, second, and third paragraphs except the averment that "the defendants were stopped from shipping the goods to the firm of Eldredge, Lewis & Co. by this plaintiff"; that allegation being denied.

Replying to the fifth paragraph, plaintiffs' testator alleged:

"It is true as alleged in said paragraph that at or about the time therein mentioned the firm of Eldredge, Lewis & Co. had in their possession some of the goods of the Bessemer City Cotton Mills, which had been shipped to it by the said cotton mills, under the agreement hereinbefore referred to, and to be sold by said Eldredge, Lewis & Co. as factors and commission merchants, under the usual terms and conditions applicable to such relations and transactions in the New York market; but it is also true that at the same time the Bessemer City Cotton Mills were indebted to the said firm of Eldredge, Lewis & Co. for divers large advances made upon the first of the shipments to them by the Bessemer City Mills, for which the said firm had a lien upon the goods then in their possession belonging to the said Mills, and that the said goods were duly sold by the said Eldredge, Lewis & Co. as such factors, and commission merchants and the proceeds arising from such sale were duly applied to the credit of the said Mills and full statement and account thereof duly made and furnished to said Mills, and upon said statement of said account there were found to be due the said Mills from Eldredge, Lewis & Co. on account of said sales about the sum of $50 which was duly credited."

Plaintiffs' testator further alleged that he was advised that the transaction with regard to the shipment of the goods, the sale thereof, etc., were matters entirely between said firm and defendants, "and that he had, and could have, no connection whatever with them," etc. After the pleadings were filed, plaintiff O. K. Eldredge died, leaving a last will and testament, appointing Daniel A. Davis and Elliott M. Eldredge executors, who offered said will for probate, qualified in the state of North Carolina, and were duly made parties plaintiff. No further pleadings were filed. Upon issues submitted to the jury, they found for their verdict: First. That no process was served on defendants in the action in the Supreme Court of New York county, and that no valid judgment was rendered against them in said action. Second. That the $5,000 for which the note was given to O. K. Eldredge by defendants "was part and parcel of the contract entered into by the Bessemer City Cotton Mills with Eldredge, Lewis & Co., when they became agents for the sale of their goods in the city of New York." Third. That on the 17th day of January, 1907, the said firm had on hand, under said contract, goods of the Mills of the value of $23,622.72. Fourth. That the said Mills owed said firm for advancements made on said goods, exclusive of the note, $8,144.33. Fifth. That, after deducting the note of $5,000 due O. K. Eldredge, the balance due the Mills by said Eldredge, Lewis & Co. was $3,144.43 less interest on note.

Judgment was rendered for defendant cotton mills against plaintiffs' executors for said amount. A number of exceptions to the admission of evidence, the refusal to strike out the counterclaim, and instructions given the jury were noted, assignments of error based thereon made, and plaintiffs sued out this writ of error. Before proceeding to discuss the assignment of error, it will be well to ascertain what facts are alleged, and admitted by the pleadings.

Defendants executed the note to O. K. Eldredge, a member of the firm of Eldredge, Lewis & Co., of New York, commission merchants, and at the same time, and as a part of the contract or agreement, upon which said loan was made, defendants and O. K. Eldredge executed the contract set out and marked "Exhibit A." Pursuant to said contract, defendants agreed to ship the output of the mills to said firm upon the terms as to advancements, commissions, etc., agreed upon. Pursuant to said agreement, defendant Mills shipped large quantities of goods to said Eldredge, Lewis & Co. to be sold by them as commission merchants on account of the Bessemer City Mills. The shipments continued until some time in October, 1904, when Eldredge, Lewis & Co. had on hand a quantity of their goods and had made advancements on them to a large amount (neither the quantity of goods nor amount of advancements are stated in the pleadings). The firm sold the goods, and applied the proceeds to the credit of the Mills. These facts are disclosed by the pleadings.

The first question raised by the assignments of error relates to the rulings of the court below regarding the validity of the judgment. The defendants deny that any process was served on them personally or otherwise, or that any valid judgment was rendered against them. Counsel suggest that it is not sufficient to deny the service of process because that might be conceded, and yet a valid judgment rendered, if there was a voluntary appearance by defendants—that a judgment regular upon the record reciting jurisdictional facts can be attacked only by alleging and proving that the court rendering it was without jurisdiction over the person of the defendant or over the subject-matter. We should concur in this position if the objection had been raised by demurrer. The issue in regard to the question of service of process was submitted to the jury, and plaintiffs introduced a properly certified transcript of the record reciting personal service, and that defendants did not appear or plead. The validity of the judgment therefore was made to turn upon the truth of the return on the summons by the person who alleged that he had made the service. It was open to the defendants to contradict this return. Thompson v. Whitman, 18 Wall. 457, 21 L. Ed. 897; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. "The courts of the United States only regard judgments of the state courts establishing personal demands as having validity, or as importing verity, when they have been rendered upon personal citation of the party, or what is the same thing of those empowered to receive process for them, or upon his voluntary appearance." St. Clair v. Cox, 106 U. S. 350, 1 Sup. Ct. 354, 27 L. Ed. 222. The jury having found that no process had been served, the judgment was absolutely void, and, if no counterclaim had been pleaded, the court would have put an end to the case. If, however, it be conceded that the court below committed error in re-

gard to the first issue, the plaintiffs were not prejudiced thereby, if defendants' counterclaim is valid, because they were allowed, in reduction of the counterclaim, the full amount of the note and interest.

The real controversy, therefore, turns upon the correctness of the rulings upon the counterclaim. In disposing of the assignments of error relating to this phase of the case, it is important to ascertain, in addition to the allegations and admissions in the pleadings, what facts are either conceded or are established by uncontradicted evidence. The reply admitted that the firm of Eldredge, Lewis & Co. had on consignment for sale as commission merchants goods of the Mills. The only question, therefore, open for inquiry was the quantity thereof. Defendant Smith testified that the partners gave him a statement, which corresponded with the books of the Mills, showing the quantity to be 393,712 yards. This is not contradicted by any witness, although two of the parties to the transaction were living at the time of the trial. The amount advanced by the partnership on account of the goods was conceded to be $15,478.29. The only controversy between Smith and the firm of Eldredge, Lewis & Co. while he was in New York for the purpose of transferring the goods and account to another commission merchant was the claim made that the Mills should pay a commission on the goods unsold. In the view which we take of the case, this was immaterial. There seems to be no controversy about the fact that the goods were sold by Eldredge, Lewis & Co. for 4.62½ cents per yard, for account of the Mills, and the proceeds credited to its account. Defendants claim, and introduce evidence which does not seem to be contradicted showing, that the goods were worth on the market 6 cents per yard. Smith testifies that he told them not to sell for less than that price. There can be no doubt, in view of the pleadings, that the relation existing between the Cotton Mills and Eldredge, Lewis & Co. was that of bailor and bailee for sale, or that the firm held the posssession of the goods with the right and duty to sell, in the absence of instructions, for the current market price in New York. We concur with counsel for plaintiffs that the allegation in the fifth paragraph of the answer, that plaintiff, O. K. Eldredge, converted the goods to his own use, is not sustained by any phase of the evidence. The goods were never in his possession otherwise than as a member of the firm. If the firm converted them to its own use, whatever its liability may be, or his liability as a partner, an allegation that he converted them to his own use is not sustained by showing a bailment to the firm and a wrongful conversion by it. We do not think, however, that the evidence sustains the theory that the goods were in a legal sense converted by any one, and, if defendants' counterclaim is dependent upon sustaining that proposition, we should hold that there was reversible error. The case being one at law, the statute provides that:

"The practice, pleadings and forms and modes of proceeding shall conform, as near as may be, to the practice, pleadings and modes of proceedings existing at the time in like cases in the courts of record of the state within which such Circuit or District Courts are held, any rule of court to the contrary, notwithstanding." Rev. St. § 914 (U. S. Comp. St. 1901, p. 684).

The Code of North Carolina (Revisal 1905, § 479), provides that the answer may contain "a statement of any new matter, constituting a

defense or a counterclaim, in ordinary and concise language without repetition." The Constitution of North Carolina (article 4, § 1), having abolished "the distinction between actions at law, and suits in equity, and the forms of all such actions," it has been uniformly held by the Supreme Court of that state, since the adoption of the Code of Civil Procedure, in accordance with the Constitution, that:

"It will not stop to inquire whether the cause of action be in trover or detinue, or whether, except for purposes of jurisdiction, it be ex delicto or ex contractu. If the party has a legal right of which he has been deprived, the court will find and administer a remedy corresponding to the right." Parker v. Brown, 136 N. C. 280, 48 S. E. 657.

"Under the present system of pleading and practice, there being but one form of action, it is the office of the complaint to set forth the facts upon which the plaintiff's right to relief is based, and, if they are adjudged sufficient, the court will direct the appropriate remedy." Moore v. Cameron, 93 N. C. 51; Lumber Co. v. Wallace, 93 N. C. 23; Scarlett v. Norwood, 115 N. C. 284, 20 S. E. 459.

If the case has been tried upon the theory that defendants' counterclaim is in tort, whereas, upon the pleadings and evidence, it is in contract, and, by reason thereof, the appellant has been deprived of some defense, or competent testimony has been excluded, or other prejudicial error committed because of the mistake as to the cause of action, a new trial will be granted. While an adherence to technical rules of pleading and procedure will not be permitted to work injustice, a liberal construction of the pleadings and procedure will not be permitted to work a like result. Applying the principles of the Code practice, as it obtains in North Carolina, we are of the opinion that the pleadings set out a state of facts entitling the defendants to sustain an action against the partnership for breach of contract, notwithstanding the allegation that "plaintiff converted the goods to his own use." It is manifest that the same principle, in respect to the sufficiency of the allegations, controls when the defendant sets up an independent counterclaim, which is nothing more than a cross-action. The duty imposed upon Eldredge, Lewis & Co. to the Cotton Mills was to sell the goods on hand for at least the current market price. 12 Am. & Eng. Enc. 958; Govan v. Cushing, 111 N. C. 458, 16 S. E. 619. It is not necessary to discuss the question whether the counterclaim can be sustained upon the theory of a conversion of the goods by either Eldredge or the partnership, because the evidence excluded the suggestion that there was any conversion by either. It is sufficient to say that in our opinion defendants would find much difficulty in sustaining their counterclaim upon the theory of a conversion. The evidence amply sustains the finding of the jury in regard to the value of the goods on the New York market upon a basis of six cents per yard. Plaintiffs offered no evidence to contradict defendants' witnesses in that respect. The measure of liability of Eldredge, Lewis & Co. was the difference between the market value of the goods and the price for which they were sold. 12 Am. & Eng. Enc. 958. Was Eldredge personally and individually liable for the breach of contractual duty by the firm of which he was a member? This depends upon the law of New York. The statute (Laws 1897, c. 420) provides that:

"Every general partner is liable to third persons for all the obligations of the partnership, jointly and severally with his general copartner."

Such is the law in North Carolina. It is clear, therefore, that Eldredge could have been sued individually upon the cause of action existing against the partnership. The learned counsel for plaintiffs concede this, but insist that it does not follow that his personal representatives may be sued in an action of law. It must be conceded that, unless the defendant Mills could have maintained an independent action against O. K. Eldredge or his executors upon the facts set out in the answer, it cannot set them up as a counterclaim. The right to sue the executors of Eldredge in North Carolina being a question of practice and procedure, the lex fori controls. The statute provides:

"In all cases of joint contract of copartners in trade or others, suit may be brought against all or any number of the persons making such contract." Revisal 1905, § 413.

In Hanstein v. Johnson, 112 N. C. 251, 17 S. E. 155, Burwell, J., speaking of the right of a creditor of a copartnership to sue, says:

"They are severally bound to him under the statutes of this state, in which all contracts are joint and several, and plaintiff may sue any one or more of the partners as he wills."

The North Carolina statute further provided that "no action shall abate by death, marriage, or other disability of a party if the cause of action survive or continues," and "Upon the death of any person, all demands, whatsoever and right to prosecute any action or special proceeding, existing in favor of, or against such person, except as hereinafter provided, shall survive to, and against the executors, administrators or collector of his estate." Revisal 1905, § 415. The learned counsel calls to our attention Leggat v. Leggat, 79 App. Div. 111, 80 N. Y. Supp. 327; Ritcher v. Poppenhausen, 42 N. Y. 373; Hoyt v. Bonnett, 50 N. Y. 538; Spofford v. Rowan, 124 N. Y. 108, 26 N. E. 350. The last-cited case sustains the contention of counsel, but it must be noted that it was decided in 1891 and prior to the act of 1897. He also calls our attention to the case of Walker v. Miller, 139 N. C. 448, 52 S. E. 125, 1 L. R. A. (N. S.) 157, 111 Am. St. Rep. 805. The writer wrote the opinion in that case while a member of that court. We have examined it and find nothing involved in the record, or said in the opinion, bearing upon the question presented here. No question of the liability of copartners was presented. The sole question was regarding the power of surviving partners in closing up the business and dealing with its assets. The question of the liability of the representative of a deceased partner was not raised. There was no attempt to enforce any demand against a partnership. The learned counsel for plaintiff suggests that the Supreme Court of North Carolina have held in Dickerson v. Wilcoxson, 97 N. C. 309, 1 S. E. 636, that the property of the personal representative of a deceased partner cannot be sold for partnership debts. An examination of the record in that case shows that the only question raised upon the appeal or decided by the court was that in an action against an executor no execution de bonis propriis could issue until the court found that the executor had assets applicable to the debt. Under the North Carolina statute, a judgment against the personal representative has no other effect than to fix the liability of deceased, and the amount of the debt, unless possession, by personal

representative, of assets, liable to judgment, is alleged and found—— "the judgment shall be held merely to ascertain the debt, unless the personal representative by pleading expressly admits assets." Code, 1883, §§ 1469–1470. Hence the judgment against the plaintiffs, executors of O. K. Eldredge, fixes no personal liability against them nor any lien or priority in respect to the application of any assets they may have in hand of their testator. If they have assets sufficient to pay the judgment, or any part thereof, and so apply them, of course, in the settlement of the partnership affairs, with the surviving partner, the amount paid by them on account of the judgment would be taken into account, but this is a matter with which defendants are not concerned. Conceding, however, that an action may have been maintained in the court of North Carolina against O. K. Eldredge, or his executors, for the cause of action set out against the partnership, the learned counsel insists that the same cause of action cannot be set up by way of counterclaim in this action. He urges his exception to the refusal of the court below to grant the motion, made at the conclusion of the evidence, "to strike out the counterclaim." This contention involves a number of other exceptions based upon the same proposition. Of course, if the counterclaim, for any reason, should not have been entertained, all of the testimony offered in support of it should have been excluded. Several reasons are assigned to sustain this contention. We will deal with them in the same order in which they are presented in the brief:

First. That the facts set out as the basis of the counterclaim disclose a cause of action cognizable only in a court of equity. Under the North Carolina Code of Procedure, both legal and equitable defenses and counterclaims may be pleaded and set up in action founded on a legal cause of action. This is so because the distinctions between actions at law and suits in equity are abolished and all issues of fact are triable before a jury. It is conceded that for well-settled reasons the practice in the federal courts is otherwise, and an equitable counterclaim cannot be set up in an action at law. Scott v. Armstrong, 146 U. S. 499, 13 Sup. Ct. 148, 36 L. Ed. 1059; Street's Fed. Eq. Prac. § 84. If, therefore, plaintiffs' suggestion that the matter set up as a counterclaim is solely of equitable cognizance, his contention must be sustained. While it is true that courts of equity take jurisdiction in matters of account, where it is shown that a court of law, by reason of its modes of procedure, cannot afford complete and adequate relief, it is clearly within the jurisdiction of a court of law to hear and determine matters of account when such reasons do not exist. The mere fact that the relation between the parties is quasi fiduciary does not, in the absence of any complication of accounts, large number of dealings, or the other elements essential to equity jurisdiction, deprive them of going into a court of law for relief. The items here are but few, the dealings simple and easily tried, upon either a few specific, or one general, issue. While it may be that for technical reasons the action of assumpsit would not lie, the common law of action of account has not, so far as we are advised, been abolished, although not often resorted to. "It is not in every matter of account, cognizable at law, that the equity jurisdiction will be exercised; the general rule being that a case is pre-

sented when the remedies at law are inadequate." 3 Pom. Eq. § 1420; Fidelity & Dep. Co. v. Trust Co. (C. C.) 143 Fed. 152. Without pursuing the discussion further, we do not doubt that it was competent for the court to entertain and try the counterclaim.

Second. That the damages sought to be recovered are unliquidated, and therefore not the subject of a counterclaim. It is manifest that the measure of damages for breach of the contract of consignment or bailment is fixed and certain.

Third. It is next insisted that the judgment against defendants is conclusive as to the merits of plaintiffs' claim against them, and it is not open to defendants to offer any matter of defense, objection, or exception, which might or should have been interposed in the original action. This is conceded, but setting up a counterclaim does not violate that well-settled principle. It is a cross-action, and entirely independent of the plaintiffs' cause of action. "A defendant is not bound to assert a counterclaim in an action brought against him, nor will the plaintiff's recovery bar a subsequent action on a cause of action which he might have set up as a counterclaim." Woody v. Jordan, 69 N. C. 189; Tobacco Co. v. McElwee, 94 N. C. 425. The evidence offered in regard to the consideration of the note, and the circumstances under which it was executed, all of which was admitted in the reply, was not received for the purpose of showing that defendants were not liable on the note, but to show that the counterclaim was connected with the subject of the action. For reasons hereinafter stated, we are of the opinion that this was immaterial and harmless.

Fourth. That the counterclaim "rests in tort," being grounded upon an alleged unlawful conversion of defendants' goods by the plaintiffs' firm. As we have said, if the defendants' counterclaim was dependent upon this theory, we should be compelled to declare that there was error because the allegation that the goods were converted by O. K. Eldredge is not supported by the evidence which shows that the goods were sold by the partnership. The authorities cited by the plaintiffs' counsel fully sustain their position.

This brings us to an examination of the definition and classification of counterclaims by the Code of North Carolina (Revisal 1905, § 481). They are: First. "A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action." Second. "An action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

It seems that the cause was tried upon the theory that defendants' counterclaim fell within the definition of the first class. It must be conceded that, for manifest reasons, the defendants would encounter serious, if not insurmountable difficulty, in sustaining this theory. The only "cause of action" or "transaction" set out in the complaint as the foundation of the plaintiff's claim is the nonpayment of the judgment alleged to have been recovered by him against defendant. The jury having found that no valid judgment was rendered, destroyed the plaintiff's cause of action; hence, defendant could have no "cause of action" or "transaction" arising out of the "cause of action," "contract," or "transaction" upon which plaintiff's claim was founded.

Davison v. Land Co., 121 N. C. 146, 28 S. E. 266. It is evident from an examination of the decisions bearing upon this class of counter-claims that they are only maintainable in an action in which the plaintiff makes out his cause of action. Prior to the enactment of the Code of Civil Procedure, the same facts were available by way of set-off or recoupment, but only to the extent of defeating the plaintiff's cause of action. For an interesting discussion of the subject, see Dushane v. Benedict, 120 U. S. 630, 7 Sup. Ct. 696, 30 L. Ed. 810, where a re-view of the decisions is made by Mr. Justice Gray; Pomeroy, Rem. & Remedial Rights, 755 et seq. Again, it is not clear that it can be said that the breach of contract in the sale of the goods by Eldredge, Lewis & Co. "arose out" of, or was "connected with," the execution of the note to O. K. Eldredge or the contract to ship the goods to El-dredge, Lewis & Co. As to this, however, we are not called upon to express an opinion.

These difficulties disappear when we deal with the counterclaim as coming within the second class. If we are correct in the conclusion that defendant the cotton mills had existing at the commencement of the action an independent cause of action against O. K. Eldredge arising on or out of contract, there can be no doubt of its right to set it up by way of cross-action, and, if sustained by proof, recover the amount thereof without any reference to the result of plaintiff's cause of action. It is held by the Supreme Court of North Carolina in Adams v. Bank, 113 N. C. 332, 18 S. E. 513, 23 L. R. A. 111, that, in action by a part-ner for a debt due him individually. the defendant can set up as a coun-terclaim a debt due by the partnership. This decision has been cited by the court with approval. In other jurisdictions the contrary has been held. 25 Am. & Eng. Enc. 578; Elliott v. Bell, 37 W. Va. 384, 17 S. E. 399. The test seems to be whether the cause of action set up is upon a joint or a joint and several contract. We are of the opinion that the court below was not in error in refusing to grant the motion to strike out the counterclaim. This ruling disposes of several as-signments of error. The reason assigned for many of the exceptions to the admission of evidence tending to sustain the counterclaim is that it is "not material, relevant or competent upon the pleadings and issues arising thereon, and, whether a several judgment could be rendered against the plaintiff if this action were brought against him by defendant. If so, the same cause of action may be set up as a counterclaim in this action for any purpose, this being an action brought by the plaintiffs' testator, individually on a judgment obtained by him against them, in the Supreme Court of the county of New York. These assignments of error, in view of what we have said, cannot be sustained. While not assigned for that reason, counsel insist that it was error to permit the defendant Smith to testify that O. K. Eldredge showed him a statement showing the number of yards of goods on hand and the amount due the partnership; that it was in his handwrit-ing and tallied with the books of the cotton mills; that this constituted a transaction or communication between Smith and Eldredge. It was clearly competent for Smith to say that a statement shown him was in the handwriting of O. K. Eldredge, and that it corresponded with the books of the Mills. This was not a transaction. Smith says that,

when the statement was handed him Mr. West, one of the partners and Mr. Oliver, the bookkeeper, were both present, and the principal part of the conversation was with Mr. West. They were alive at the time of the trial. The only material facts to which Smith testified was as to the written statement. We find no reversible error in the rulings of the court below in respect to the admission of evidence. The issue submitted, while not strictly responsive to the pleadings, presented to the jury contrasted questions of fact and the findings, taken in connection with the pleadings, enabled the court to render a judgment determinative of the rights of the partners. We have examined the charge of the court below, and find no error prejudicial to plaintiffs. While the case was tried upon a theory different from that which we think correct; the same result has been reached and substantial justice done.

We have given the records and briefs a careful consideration, and are of the opinion that for reasons stated the judgment should be affirmed.