CARRIE SESSOMS v. ANNE E. TAYLOE ET AL.

(Filed 30 September, 1908.)

**Husband and Wife—Lands—Permissive Occupation—Rent—Year's Support—Liens for Advances—Evidence—Instructions.**

When, without contract or agreement as to rent, deceased and his wife were occupants of land by permission of the owners, lived with them and were cultivating a crop thereon at the time of his death, having executed to the owners a crop lien not to exceed $121, and at his death his widow was allowed for her year's support the sum of $50 from the proceeds of the crop raised, and her whole allowance did not equal the full amount specified by statute, and the deceased's portion of the value of the crop is more than sufficient to pay the $121 limited in the crop lien and the $50 allowed the widow: *Held*, (1) that the widow could maintain an action for her allowance against the owners of the land in possession of the crops; (2) that the lower court should have instructed the jury, according to plaintiff's prayer, there being no evidence of any advances made under the lien bond introduced by defendants, that nothing could be recovered thereunder; (3) that, in the absence of evidence as to the value of the rent, the jury should award nothing on that account.

ACTION before *O. H. Allen, J.,* and a jury, at April Term, 1908, of BERTIE.

Eliminating all immaterial matter, the record discloses the following facts: Defendants, on 21 February, 1906, were the owners of a small tract of land, which they conveyed to J. P. Sessoms, the husband of plaintiff, reserving a life estate. They permitted said Sessoms to move upon the land in January, 1907, for the purpose of cultivating and making a crop thereon. The defendants were elderly maiden ladies and lived on the land. Sessoms was their nephew. It seems that he, with his wife and child, lived in the house with defendants. There was no contract between the parties in regard to rent. On 12 January, 1907, Sessoms executed a crop lien or chattel mortgage to defendants upon all of the crops to be raised by him on the land during the year 1907, for the purpose of securing money and supplies to be advanced

148—24

to him by them, and, to the extent of $121, to be expended in the cultivation of the crop. At sometime during the year, about July, Sessoms was taken sick, and died in September, leaving the plaintiff, his widow, and one child. Plaintiff at times worked on the crop and hired hands to do so, paying them. The testimony in regard to the time and amount paid is indefinite. Soon after the death of her husband plaintiff applied for her year's support, and it was duly allotted to her, consisting of household and kitchen furniture, etc., and "the crop on the land of J. W. Sessoms and Anne E. and Melissa Tayloe, subject to the expense of housing and indebtedness, $50." The entire property allotted was of less value than the amount to which she was entitled as her year's support. It seems from the record that a portion of the personal property, together with the entire crop made on the land, was in the possession of defendants. After the allotment, W. L. Vaughn, as agent of the plaintiff, tendered to defendants the amount of the indebtedness due them, and demanded possession, which was refused. Defendants claimed that all of the crop belonged to them. On 7 October, 1907, plaintiff brought suit to recover the personal property and crop, and at the same time obtained possession by virtue of the order of the Clerk. Her agent housed the crop. There is no evidence of the amount advanced to Sessoms pursuant to the lien, or of the time during which defendants worked on the crop, or the amount paid out by them for labor. One witness says that he stripped fodder one day. In the complaint plaintiff alleges that she is the owner and entitled to the possession of the crops and that defendants wrongfully detain them. The answer denies these allegations. The other property was eliminated from the action by an offer on the part of defendants to submit to judgment for the recovery thereof and "to judgment for the cost." The general issues were submitted. His Honor charged the jury that the law presumed that the defendants in pos-

session of the land were the owners of the crop, they not
having parted with the life estate. Plaintiff excepted. Sev-
eral requests for instructions were made by plaintiff, which
will be noted in the opinion, all of which were refused and
exceptions duly taken. The jury answered the issues against
plaintiff and assessed the value of the crop, "after expense
of housing," at $300. There was judgment against plaintiff
and her security for the value of the crop and costs. Plain-
tiff excepted and appealed.

*Winston & Matthews* for plaintiff.
*W. R. Johnson* for defendants.

CONNOR, J., after stating the case: It is settled by numer-
ous decisions of this Court that, under our system of pro-
cedure, when the action is for the possession of personal prop-
erty, or the value thereof, in the nature of the old action of
*detinue,* the Court will in proper cases treat the action as
for foreclosure of liens, and adjust the rights of the parties,
either upon the evidence or, if necessary, by a reference to
state an account. In *Cotton v. Willoughby,* 83 N. C., 75,
*Smith, C. J.,* said: "If the plaintiffs recover, they will hold
as trustees, and, as all interested in the fund are before the
Court, we see no reason why in the present proceedings the
mortgage may not be foreclosed, the equities involved ad-
justed and the whole matter finally adjudicated in the ac-
tion." In *Parker v. Brown,* 136 N. C., 280, an action in
several respects like this, we said: "If she had a legal right,
of which the defendant has deprived her, the Court will
find and administer a remedy corresponding to her right."
What, therefore, was the plaintiff's right in respect to the
crop? To answer this question it is necessary to ascertain
what right her husband or his personal representative had,
and this involves the inquiry, What relation existed between
the defendants and Sessoms in regard to his occupation of
the land during the year 1907? The defendants having

reserved a life estate in the land, we do not perceive how the deed of 2 February, 1906, affects the legal status of the parties. The defendants were unquestionably the owners and in possession of the land. Sessoms entered and occupied it by their permission. He had no right, under the deed, to enter or cultivate the land. The testimony shows him to be an occupant, rather than a tenant. No rent was reserved. The crop, when made, was his property. Defendants' witness, Joseph Sessoms, the father of J. P. Sessoms, says: "I saw J. P. Sessoms work the crop. He was in charge of the place. * * * He was in charge of the land and they all lived there. I went there (to help work) on his account partly, and partly on account of all of them. · He was my son and I did not want to see the crop ruin." The defendants took from Sessoms a lien "on all the crops which may be made by me upon said land during said year," describing it as the land of the defendants. The lien contains the provision: "And if I fail to pay the amount so advanced by the time specified, the said Anne Eliza and Melissa Tayloe shall have power to take possession of said crops and sell the same, the proceeds to be applied to the payment of said advances, and the surplus, if any, to J. P. Sessoms." This lien was introduced by defendants, but no evidence was offered showing that any amount was advanced by them. We do not find any evidence of a rent reserved by defendants, or indication of a lease of the land. It would seem that Sessoms was an occupant of the land for the purpose of cultivating it. He was liable to an action of *assumpsit,* for a reasonable amount, for use and occupation. "In such cases the law will imply a promise to pay compensation for the use and occupation." 2 Taylor Landlord and Tenant, sec. 636. By section 1986 of Revisal it is provided that, "Whenever any person shall occupy land of another by the permission of such other, without any express agreement for rent, * * * the landlord may recover a reasonable compensation for such

occupation." Whether the amount to be recovered "for use and occupation" is subject to the provisions of section 1993, Revisal, that "when lands shall be rented or leased by agreement, written or oral, for agricultural purposes," etc., the crop shall be deemed to be vested in the lessor, etc., is not clear. The statute (Revisal, sec. 1980) was enacted in 1850, because the Court, following the English decisions, had held that *assumpsit* for use and occupation would not lie unless there was an express promise to pay therefor. *Anonymous,* 2 N. C., 485 (559); *Long v. Bonner,* 33 N. C., 27. There is much evidence in this record indicating that defendants did not intend to charge Sessoms for "use and occupation," but that, for failing to support and take care of them, the deed should be "null and void." If the right to sue for "reasonable compensation" does not give any lien under section 1993, the right of the defendants is confined to an action against the administrator of Sessoms. As the interest of the plaintiff, under the allotment of her year's support, is confined to $50, she is not further interested in the right to the crop, as between the personal representative and the defendants, than the recovery of so much as will pay her the sum of $50. Assuming that, as between the parties to this action, the defendants are entitled to retain so much of the crop, under section 1993, as will pay the amount found to be due for use and occupation, it is manifest that the remainder belonged to the personal representative of Sessoms, subject to defendants' claim under the lien for amounts advanced to him and the widow's year's support. There was no evidence that any sum had been advanced. The plaintiff asked his Honor to instruct the jury that, as the defendants had offered no evidence of any such advances, they could not hold any part of the crop under the lien. We think that this instruction should have been given. The plaintiff further requested his Honor to instruct the jury that, even if the relation of landlord and tenant existed, in the absence of any

evidence of the value or amount of the rent, the defendants cannot hold any part of the crop for rent. Taking the view most favorable for the defendants, the plaintiff was entitled to this instruction. Other instructions were asked and refused, which are not necessary to be considered. Upon the whole evidence the plaintiff was entitled to maintain her action, certainly to the extent of recovering so much of the crop as was necessary to pay her $50 included in the allotment. We can see no good reason for ordering a new trial, with the delay and expense incident thereto. The small amount allowed by the law to the widow and her young children to provide for their support during the first year following the loss of the "breadwinner" should not be withheld from them by vexatious and expensive litigation: It is apparent from the entire evidence that the value of the crop, made largely by the labor of the sick husband, is sufficient to pay the widow her $50 and discharge the lien, which cannot exceed $121 and reasonable compensation for use and occupation. The defendants have wrongfully withheld it from her. Let the judgment be so modified that the plaintiff will retain from the proceeds of the crop seized in this action $50. She will out of the amount remaining pay the costs incurred in the Superior Court and the costs of this Court. The defendants will have judgment for the balance.

Modified and Affirmed.